```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
DUNKIN' DONUTS INCORPORATED,

                Plaintiff,                    MEMORANDUM AND ORDER
                                              04-CV-4100 (DRH)(MLO)
        -against-

GOT-A-LOT-A-DOUGH, INC.,
CATHERINE KUNCMAN, and BEN-ZION
C. KUNCMAN, a/k/a BEN KUNCMAN,

                Defendants.
-------------------------------X
A P P E A R A N C E S:

For Plaintiff:
    O'Rourke & Degen
    225 Broadway, Suite 715
    New York, New York 10007
       By: Ronald D. Degen, Esq.

For Defendants:
    Steinberg, Fineo, Berger & Fischoff, P.C.
    40 Crossways Park Drive
    Woodbury, New York 11797
       By: James E. Brandt, Esq.
```

HURLEY, District Judge

By Order to Show Cause originally returnable on October 7, 2005, plaintiff Dunkin' Donuts Incorporated ("Dunkin' Donuts" or "plaintiff") moved for "a writ of assistance" against Got-A-Lot-A-Dough, Inc., Catherine Kuncman, and Ben-Zion C. Kuncman, a/k/a Ben Kuncman, ("defendants"), "and/or an order issuing contempt sanctions to compel [d]efendants to comply" with the terms of the November 23, 2004 consent judgment by "ceasing to use and display the Dunkin' Donuts trademarks, trade name and trade dress at their businesses located at 4261 Austin Boulevard, Island Park, New York and at 3151 Lawson Boulevard, Oceanside, New York." (Pl.'s O/T/S/C at 1.)

By memorandum filed on September 23, 2005, defendants

interposed their opposition to the relief sought by plaintiff, together with, inter alia, a cross-motion for injunctive relief.[1]

The case was conferenced before the undersigned on October 7, 2005. On that date, the Court indicated it would address the outstanding motions shortly. The attorneys were also told that if it developed that material issues of fact precluded either party from being awarded judgment as a matter of law – as then seemed probable and, ultimately, proved to be the case – the matter would be tried beginning on January 17, 2006.[2] Each party was also directed to send a letter to the Court setting forth the issues that it maintains should be addressed at trial should its

---

[1] In defendants' memorandum of law filed on September 23, 2005, defendants indicate that they "intend to file a Complaint for affirmative relief against Dunkin' Donuts." (Defs.' Mem. Opp'n at 2, n.1.) To date, "a Complaint for affirmative relief" has not been filed.

[2] The case was scheduled for a trial rather than for a hearing, pursuant Fed. R. Civ. P. 65(a)(2)("The Court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the [preliminary injunction] application.").

The parties were also directed to provide, by a letter brief, their opinions as to whether any of the items of relief being sought were non-equitable in nature and, if so, whether either party was requesting a jury trial. In response, plaintiff has indicated that "the parties do not have the right to a trial by jury" (Pl.'s Oct. 31, 2005 Letter Br. at 1), and defendants have "waived their right to a jury trial of any issue that a jury trial may be available." (Defs.' Oct. 31, 2005 Letter Br. at 3.)

Finally, reference to the docket sheet entry of November 3, 2005, indicates that Magistrate Judge Michael Orenstein has directed expedited discovery so that the parties will be prepared to proceed to trial before this Court, if necessary, in relatively short order.

motion be denied. Those letters have been received and reviewed by the Court.[3]

INTRODUCTION

In March 1999, Dunkin' Donuts entered into a franchise agreement with Got-A-Lot-A-Dough, Inc. authorizing Got-A-Lot-A-Dough, Inc. to operate a donut shop in Island Park, New York utilizing the Dunkin' Donuts system. A little more than a year later, the same parties entered into a second franchise agreement with respect to a donut shop in Oceanside, New York. However, the relationship between the parties soon deteriorated and litigation ensued. That litigation was resolved via a November 15, 2002 settlement agreement. Pursuant to that agreement, defendants agreed, inter alia, that they would sell their two franchises, remain current in the interim on their obligations to plaintiff under the franchise agreements, and pay plaintiff certain sums at the closings.

Claiming that defendants breached their obligations under the 2002 settlement agreement, plaintiff commenced the present action on September 22, 2004. On November 23, 2004, the parties reached a settlement that was memorialized in what the parties labeled as the "First Amendment" to the 2002 settlement agreement.

Under the First Amendment, as accurately synopsized by

---

[3] Plaintiff's letter outlining the potential issues for trial is dated October 20, 2005. The corresponding letter by defendants is dated October 31. 2005.

plaintiff:

> The parties entered into a Stipulation of Settlement wherein Defendants consented to the entry of a Consent Judgment that provided for: (1) a money judgment; (2) a judgment terminating their Franchise Agreements; and (3) a permanent injunction prohibiting Defendants from using the trademarks, trade names and trade dress of "Dunkin' Donuts." Defendants also agreed to remain current in the payment of weekly franchise fees and advertising fees. Plaintiff, in turn, reinstated Defendants' Franchise Agreements to enable them to sell their Franchises and agreed to hold the Consent Judgment in escrow, provided that Defendants did not breach their Franchise Agreements.

(Pl.'s Mem. Supp. of Mot. to Enforce Consent J. at 1; see also Ex. D to Pl.'s Exs. in Supp. of Mot. to Enforce J.)

The First Amendment also required Dunkin' Donuts to consider a then-existing sales agreement between Pradeepsinll Gohil et al ("Gohil") and defendants for the Island Park and Oceanside stores.[4] It further provided that if that agreement was not approved, "then [the defendants] shall have 120 days from the date of their receipt of notice that the Gohil Agreement has not been approved to submit a bonafide Purchase and Sale Agreement" involving another prospective purchaser. Id. at 3-4. By letter dated February 28, 2005, plaintiff rejected the Gohil

---

[4] The March 31, 2004 agreement called for Gohil to purchase all of the "assets comprising the retail Dunkin' Donuts franchise businesses as presently conducted by the Seller" at the two franchise locations for the sum of $1,455,000.00. (Ex. L to Pl.'s Exs. in Supp. of Mot. to Enforce J.) Parenthetically, Gohil's first name has been spelled in numerous ways in the materials submitted. The Court has selected the spelling as it appears in the above mentioned sales agreement, i.e. Pradeepsinll.

agreement on the ground that "the financial terms and conditions of the proposed transfer would jeopardize the ability of the buyer to maintain, operate, and meet the buyer's financial obligations to Dunkin' Donuts, third party suppliers and creditors." (Ex. L to Pl.'s Exs. in Supp. of Mot. to Enforce J.) Apparently, no successor agreement was submitted to plaintiff in a timely fashion.

And finally it warrants mention that defendants signed a General Release contemporaneously, and as part of the First Amendment. That release reads as follows:

> GOT-A-LOT-A-DOUGH, INC., a New York corporation, and BEN KUNCMAN and CATHERINE KUNCMAN, residents of the State of New York, with places of business in Nassau County, hereby release and forever discharge Dunkin' Donuts Incorporated from all debts, demands, actions, causes of action, contracts, claims, obligations and liabilities which they now have or ever had against Dunkin' Donuts Incorporated, or any corporation affiliated therewith from the beginning of the world to this date arising from or in connection with the Franchise Agreements or any other agreements or transactions among the parties, including, but not limited to, any and all state or federal antitrust claims, securities law claims, breach of contract claims, fraud or misrepresentation, breach of fiduciary duty, unfair trade practices claims (state or federal,) and all other claims and causes of action whatsoever.

(Ex. D to Ex. D of Pl.'s Exs. in Supp. of Mot. to Enforce J.)

The agreed-upon consent judgment was submitted to, and signed by the Court on November 23, 2004. Pursuant to the parties' agreement, the consent judgment was thereupon held in escrow by plaintiff's attorneys and was to continue to be so held

unless and until a "breach of [the November 23, 2004 First Amendment to the 2002 settlement agreement] by Franchisees [occurred] and [they] fail[ed] to timely cure [the] default." (Ex. D to Pl.'s Exs. in Supp. of Mot. to Enforce J., ¶ 7.)

Beginning with a letter dated February 15, 2005, plaintiff sent a series of notices to Catherine Kuncman detailing alleged breaches by defendants, including improperly reporting gross sales and underpaying sums due to the franchisor. That process culminated in a July 5, 2005 letter being sent by the escrow agent announcing that it was "releasing [the] Judgment from escrow to Dunkin' Donuts" (Ex. H to Pl.'s Exs. in Supp. of Mot. to Enforce J.) and demanding certain actions by defendants including the cessation of their use of Dunkin' Donuts' trade names, trademarks, and trade dress. Id. at 2. Defendants declined to follow the latter direction, thus leading to the present litigation.

## DISCUSSION

1. Plaintiff's Motion for Writ of Assistance and and for Contempt Sanctions to Compel Defendants to Cease Using Dunkin' Donuts' Trademarks, Trade Name and Trade Dress[5]

---

[5] Plaintiff has invoked Fed. R. Civ. P. 70 in seeking a Writ of Assistance and Contempt Sanctions. That Rule provides in pertinent part:

> If a judgment directs a party . . . to perform any . . . specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party. . . . The court may also in

The First Amendment was signed on November 23, 2004. Little more than three months later, on February 15, 2005, plaintiff sent defendants a Notice of Default, claiming that the required sales reports were not submitted in a timely fashion and that required franchise and advertising fees remained unpaid. Like notices were sent on April 15 and June 6, 2005. On July 5, 2005, the previously mentioned notice was sent to defendants that the consent judgment was being released from escrow due to the delinquencies previously cited as supplemented by further delinquencies through to the date of the July letter.

In toto, plaintiff maintains that defendants "owe more than $45,000 in franchise fees and advertising fees" and "due to defendants' failure to timely cure their defaults," the amounts payable have been accelerated resulting in a final indebtedness of "$225,017.75, plus attorney's fees and collection costs." (Pl.'s Mem. Supp. of Mot. to Enforce J. at 3.)

Defendants characterize plaintiff's request for relief thusly: "Succinctly stated, Dunkin' Donuts improperly seeks to effect a forfeiture of the Kuncmans' two franchises where no default has taken place and Dunkin' Donuts is the party who is actually at fault." (Defs.'Mem. Opp'n at 4.)

On the materials submitted, the Court is not prepared to determine whether the plaintiff is entitled to the relief requested. With respect to the amount claimed to be due, it

---

proper cases adjudge the party in contempt.

seems that some sum, possibly the whole sum claimed by plaintiff, has not been paid by defendants as required under the First Amendment.  (See Ben-Zion C. Kuncman Sept. 20, 2005 Reply Aff., ¶ 64 ("Despite Dunkin' Donuts' admitted material breaches of the Franchise Agreement, my wife and I have strived in good-faith to pay all monies owing under the 'First Amendment to Agreement.' We intend to pay the remaining amount in full as soon as possible.").) (But see Ben-Zion C. Kuncman's initial, i.e. Aug. 25, 2005 Aff., ¶ 58 ("We have paid all fees due and owing") and Ben-Zion C. Kuncman's Reply Aff. at ¶ 58 (indicating that $2,337.43 of the "Franchise/Advertising Fees" since November 23, 2004 remains unpaid).)

But beyond the question of how much may be due to plaintiff, is the issue of whether plaintiff caused the delinquencies about which it now complains in violation of its obligation to proceed in good faith in its contractual dealings. Thus Ben-Zion C. Kuncman asserts that Dunkin' Donuts falsely saddled his stores with a C rating (Ben-Zion C. Kuncman Aug. 25, 2005 Aff., ¶ 49), thus depriving it of certain products, equipment, and training which were available to higher rated stores.  (Id., ¶¶ 50 & 56; see also Aff. of Daniel P. Linihan, a former Dunkin' Donuts' employee which, patently at least, tends to support some of defendants' complaints.)

There is also a serious question as to whether plaintiff breached its obligation under paragraph 3 of the First Amendment by failing to review the Gohil agreement in good faith.

Gohil entered into a "[c]ontract with the Kuncmans [on March 31, 2004] to purchase the two Dunkin' Donuts stores." (Lee M. Albin, Esq., Aug. 23, 2005 Aff. ¶ 9.)  The contract was "duly submitted to Dunkin' Donuts on or about April 28, 2004 by the Kuncmans . . . for approval" (id. at ¶ 11), but was rejected "some twelve (12) months later." Id.  Curiously, however, in 2003, when the same purchaser was interested in the same properties, Dunkin' Donuts apparently found him to be a suitable replacement franchisee. (See Ex. D to Ben-Zion C. Kuncman's Aff. (a Mar. 13, 2003 Letter to Gohil from Dunkin' Donuts concerning the Island Park and Oceanside stores).)

For the reasons indicated, plaintiff's motion for judgment as a matter of law is denied.

2. Defendants' Request for Relief

Defendants similarly are not entitled to judgment as a matter of law.  The existence of multiple material issues of fact are evident from a review of the papers submitted.  Those issues of fact include those mentioned above with respect to plaintiff's motion.  Accordingly, defendants' motion for judgment as a matter of law is likewise denied.

3. Unresolved Factual and Legal Issues

Before the delineating the factual issues to be addressed at trial, it is necessary to resolve certain fundamental legal questions, the foremost of which is whether the trial proof should be limited to events which post-date November 23, 2004.  That, it will be recalled, is the date that the

parties entered into the First Amendment to the 2002 settlement agreement, as well as the date the corresponding judgment was signed by the Court.

Plaintiff's application is based solely on defendants' supposed defaults since November 23, 2004. Indeed, it maintains "that any acts committed prior to November 23, 2004, when the First Amendment was signed, have no bearing on the issues before this Court." (Ronald D. Degen, Esq.'s Oct. 22, 2005 Letter to Court at 4.)

Defendants apparently harbor a different view. They seek a declaration that both the stipulation of settlement and the First Amendment to the 2002 agreement are null and void as the product of "fraudulent inducement of the defendant, Dunkin' Donuts' breach of its duty of good faith, its laches, its breach of contract and its 'unclean hands.'" (Defs.' Mem. Opp'n at 2.) In support of the relief requested, a litany of perceived wrongs since 1998 is found in their current submissions. For instance, Ben-Zion C. Kuncman complains of being unable to attend the Dunkin' Donuts University because of his physical condition and the fact that the "University was not handicapped accessible." (Aug. 25, 2004 Aff. of Ben-Zion C. Kuncman ¶ 8.) He speaks of events preceding the "three separate federal court actions . . . commenced by Dunkin' Donuts on fabricated and/or 'trumped-up' grounds" and the resulting settlement of those actions on November 15, 2002. (Id. ¶ 18.) Thereafter details are provided concerning defendants' effort to sell the two franchises in 2002,

coupled with an explanation of how "Dunkin' Donuts' actions ruined the deal." (Id. ¶ 28.)

In addition to defendants' recitation of events which predate November 23, 2004, it warrants mention that the stipulation of settlement includes the following handwritten paragraph which was inserted in the draft prepared by plaintiff at defense counsel's insistence:

> This stipulation and the annexed proposed judgment are subject to a Settlement Agreement dated November 15, 2002 and a First Amendment dated November 23, 2004 (collectively the "Agreement"). The judgment cannot be executed upon, except pursuant to the terms of the Agreement.

(Nov. 23, 2004 Stip. Settlement ¶ 4.)

A corresponding handwritten provision — again inserted at defense counsel's insistence — is found in the November 23, 2004 judgment.

In sum, defendants apparently believe that the parties' troubled relationship since 1998 is relevant for present purposes in contrast to plaintiff's position that only post-November 23, 2004 events are germane.

The question then is what are the appropriate temporal parameters for the trial? Defendants have failed to address the issue of preclusion vis-a-vis the parties' November 23, 2004 stipulation of settlement, First Amendment, and the corresponding judgment. Presumably, all disputes that existed between the parties up to that date have been resolved. It would seem that any facts then <u>known</u> by defendants, even if arguably synonymous

with a breach of contract, economic extortion, or fraud in the inducement, may not be utilized now as the basis for a new cause of action. To the extent defendants believe otherwise, they are directed to submit a memorandum to the Court on or before March 17, 2006, with supporting authorities. Should defendants submit such a memorandum, plaintiff shall file its papers in opposition by March 31, 2006, with any reply brief by defendants to be due on April 7, 2006. In the absence of a brief convincing the Court that its visceral reaction to the above issue is incorrect, the parties are advised that their proof, subject to certain exceptions by way of providing background information, will be limited to the events that post-date November 23, 2004.

Another related, and similarly unaddressed legal issue in defendants' submissions is the significance of the general release, quoted earlier, which defendants signed contemporaneously with the First Amendment. By its terms, that release precludes defendants from asserting, inter alia, any claims based on breach of contract, fraud, misrepresentation, unfair trade practice claims, "and all other claims and causes of action whatsoever" that predate November 23, 2004. Again, the language of the general release is inconsistent with defendants' apparent, broad-based notion of trial relevancy, certainly as to then-known facts. Subject to the procedure and time frames described in the prior paragraph concerning the submission of briefs, the parties will be limited in their trial proof to post-November 23, 2004 events.

Should defendants maintain that significant pre-November 23, 2004 information was unknown to them until after that date, such information should be identified via a proffer, coupled with argument and supporting authorities as to relevance. Along the same lines, if defendants contend that evidence of duress or economic extortion related to their execution of the various documents in November of 2004 is admissible, even if the underlying facts were known by them prior thereto, that issue, of course, should be briefed, again subject to the above schedule. Additionally, evidence of irreparable injury, and of expected hardships should injunctive relief be either granted or denied, will be germane at trial given that both parties are asking for such relief. And finally, the Court anticipates that somewhere within the submissions will be a discussion of the impact of the aforementioned handwritten paragraphs inserted into the stipulation of settlement and judgment at defense counsel's insistence. What effect, if any, does that language have in defining what facts are relevant?

Until such time as the above legal issues are resolved, temporal constraints on the trial proof may not be established with finality. Nonetheless, factual information bearing on the following issues will be admissible at trial if otherwise satisfying the Federal Rules of Evidence: (1) have defendants complied with their obligations under the stipulation of settlement dated November 23, 2004 and the First Amendment bearing the same date; (2) has plaintiff complied with its

obligations under the same two documents, including (a) providing a reasonable review of the Gohil agreement, and (b) by not causing the charged delinquencies via the bad faith actions alleged by plaintiff;[6] (3) did the escrow agent properly release the judgment from escrow; and (4) if so, have defendants met their obligations under the judgment?

The above recitation of the factual issues will be revisited by the Court upon the completion of the ongoing discovery before Judge Orenstein. Procedurally, the Court will call the parties in for a conference at that time so that the issue may be further discussed and, if necessary, refined or amplified prior to the commencement of trial.

### CONCLUSION

For the reasons indicated, the parties' respective motions for judgment as a matter of law are denied.

The defendants, if they intend to offer evidence of events predating November 23, 2004, shall submit memoranda of law on the legal subjects broached above consistent with the designated procedure and time frames. Absent such submissions,

---

[6] Another legal issue that the parties should be prepared to address prior to trial is under what circumstances, if any, would a breach by plaintiff preclude a granting of the relief it seeks assuming that the proof also establishes that defendants have failed to discharge one or more of their obligations?

or if the submissions do not support defendants' position, no evidence, other than possible background information, will be received that predates November 23, 2004.

    SO ORDERED.

Dated: February 10, 2006
      Central Islip, New York

_____/s/_____
DENIS R. HURLEY, U.S.D.J.